THE SANTA CLARA FEMALE ACADEMY

*v.*

FRANCIS J. SULLIVAN *et al.*

*Filed at Springfield March 27, 1886.*

1. CORPORATIONS—FOREIGN CORPORATIONS—*as to the exercise of their powers by foreign corporations outside of the jurisdiction in which they were created.* A corporation created in one State, may, upon the principle of comity, exercise within another State the general powers conferred by its own charter and permitted by the laws of its own State, provided the doing so be not inconsistent with the laws or public policy of such other State. And such public policy is manifested by its legislation.

2. SAME—*foreign corporations "doing business in this State"—those terms construed.* It is provided in section 26 of chapter 32, (Rev. Stat. 1874, p. 290,) that "foreign corporations doing business in this State," shall have no other or greater powers than corporations of like character organized under the general laws of the State, thereby impliedly granting to such foreign corporations the same privileges enjoyed by domestic corporations. The restriction to "foreign corporations doing business in this State" is not to be understood as necessarily excluding such foreign corporations as may carry on the special business for which they were organized, exclusively in another State, but receiving lands in this State by devise, and the assertion in the State of ownership over them, will be a sufficient "doing of business in this State," within the purview of the statute.

3. SAME—*corporations for educational purposes—of their power to hold real estate—extent of the power—as to the mode of acquiring title—foreign and domestic corporations.* The general laws of this State, for many years prior to 1874, and since, have expressly empowered corporations for educational purposes to take and hold real estate by grant and devise, without limit as to quantity and value.

4. There is in the law of this State no discrimination against foreign corporations, but they are placed on the same footing with our own domestic corporations, and are given, by implication, equal powers with domestic ones of like character. Our law places them under the same restrictions as ours are, but this has no reference to the manner of their coming into existence or the mode of their organization.

5. So a corporation organized under the laws of another State, purely for educational purposes, having the capacity, under its charter or the laws of its State, to acquire, hold and convey real and personal property, may take and hold real estate in this State, by devise, to the extent of its capacity in the State of its creation.

6. SAME—*former decisions—as to powers of foreign corporation here.* The cases of *Carroll* v. *East St. Louis*, 67 Ill. 568, *Starkweather* v. *American Bible Society*, 72 id. 50, and *United States Trust Co.* v. *Lee*, 73 id. 142, in respect to what was actually decided by them, do not conflict with the ruling in this case. The remarks in the first of those cases, which may be inconsistent with the rule here announced, not being necessary. to the decision therein made, are to be regarded as *obiter dicta.*

7. SAME—*general power to acquire real estate—whether it includes a devise.* A power conferred by law upon a corporation to acquire real estate, is broad enough to enable it to take by devise.

8. SAME—*perpetuities—educational purposes.* The rule in respect of perpetuities has no application to legacies or devises for educational purposes.

9. SAME—*a devise construed—whether for educational purposes.* A devise of real and personal property generally, without stating the purpose, to a corporation created and existing for educational purposes alone, must be regarded as a devise for educational purposes.

10. SAME—*as to the place of the exercise of its powers by a corporation for educational purposes.* It does not follow because the charter of an educational corporation provides that its academy shall be located at a place named, with power to establish a branch at another place, that all the powers conferred upon it must be exercised at such places and no other. The corporate purpose, that of furnishing education, must be carried on at the place or places named, but the incidental powers necessary and proper to maintain the academy there, may be exercised elsewhere.

11. SAME—*corporation for "pecuniary profit"—as, a corporation for educational purposes* A corporation for educational purposes, as, an academy, is not one for "pecuniary profit," merely because fees are charged for tuition. A corporation for pecuniary profit is one organized "for the pecuniary profit of its stockholders or members."

12. WILL—*of the estate devised—life estate with power of disposition— vested remainder.* A testator devised all his estate to his wife, in trust, to pay his debts and funeral expenses, to use so much of the income thereof as should be necessary for her own support and that of his three children, with power to sell and dispose of any portion of the estate, and to use the proceeds of sale, or so much as might be needful, to pay debts and funeral expenses, and to reinvest the balance for the benefit of his estate, and then provided, "and after the death of my said wife, all my estate, both real and personal, shall descend and belong to my said children, in equal proportions," etc.: *Held,* that the widow took only a life estate in trust, with power of disposition of the fee, and that a child dying before the widow, had no estate in possession, but was seized with a vested remainder, which was a devisable estate.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. HYNES, ENGLISH & DUNNE, and Mr. RICHARD PRENDERGAST, for the appellant:

A corporation of another State, having authority to take and hold land by the laws of the State of its creation, and whose corporate purposes are favored by the laws and public policy of Illinois, may take and hold land in Illinois for its corporate purposes. Appellant in this case is such a corporation, and exists for educational purposes solely. Therefore it may take and hold land in Illinois for its corporate purposes. *Thompson* v. *Waters,* 25 Mich. 214; *Bank of Augusta* v. *Earl,* 13 Pet. 589; Story on Conflict of Laws, sec. 38; *State* v. *Railroad Co.* 25 Vt. 433; *Lumbard* v. *Aldrich,* 8 N. H. 31; *Silver Lake Bank* v. *North,* 4 Johns. Ch. 370; *Page* v. *Heineberg,* 40 Vt. 81; *White* v. *Howard,* 38 Conn. 342; *Thompson* v. *Swoope,* 24 Pa. St. 475; *Merrick* v. *Santward,* 34 N. Y. 217; *Mining Co.* v. *Baker,* 3 Nev. 386; *Life Ins. Co.* v. *Cross,* 18 Wis. 109; *Lathrop* v. *Com. Bank,* 8 Dana, (Ky.) 114; Rorer on Inter-State Law, 288; Gardiner on Am. Int. Law, 175; *Hollis* v. *Drew Theological Seminary,* 95 N. Y. 166; *Cowell* v. *Springs Co.* 100 U. S. 55; *Christian Union* v. *Yount,* 101 id. (11 Otto,) 352; *Stevens* v. *Pratt,* 101 Ill. 224; *Loan Co.* v. *Tilton,* 19 Fed. Rep. 73; 6 McLean, 1; 5 id. 111.

The statutes of Illinois expressly provide that foreign corporations of like character to those that may be organized under the general laws of Illinois, shall have equal power with such domestic corporations, including the power to take and hold land. Appellant in this case is a corporation of like character to those that may be formed under the general laws of Illinois for educational purposes solely, with power to take by devise, and hold land without any limitation. Rev. Stat. 1874, secs. 26, 29, 30, 31, chap. 32; sec. 1, chap. 144; *Stevens* v. *Pratt,* 101 Ill. 217.

The rule against perpetuities does not apply to legacies or devises for educational purposes. Such legacies and devises have been steadily fostered, encouraged and upheld. *Heuser* v. *Harris*, 42 Ill. 425; *Andrews* v. *Andrews*, 110 id. 223; Perry on Trusts, secs. 696, 700; *Russell* v. *Allen*, 107 U. S. 163; *Ould* v. *Washington Hospital*, 95 id. 303; *Inglis* v. *Sailors' Snug Harbor*, 3 Pet. 99; *Vidal* v. *Girard*, 2 How. 127; *Perin* v. *Carey*, 24 id. 465; 43 Eliz. C. 4; *Powers* v. *Cassidy*, 79 N. Y. 602; *Germaine* v. *Baltes*, 113 Ill. 29.

The public policy of a State with reference to the capacity of aliens to take and hold land therein, is its public policy as respects foreign corporations. *Trust Co.* v. *Lee*, 73 Ill. 147; *Loan and Trust Co.* v. *McKinney*, 6 McLean, 5; *Beazure* v. *Hillegas*, 7 S. & R. 313; *Runyan* v. *Caster*, 14 Pet. 131. And see, for the power of aliens in this respect, Illinois Statutes cited in argument, and chap. 6, Rev. Stat. 1874.

Mr. A. A. EXLINE, for the appellee Braley:

The statutes of Illinois do not, either in express terms or by necessary implication, give to foreign corporations not doing business in this State, and not organized under the general law of this State, the right to take real estate in this State by devise. Rev. Stat. 1874, secs. 26, 31, chap. 32, and sec. 1, chap. 144.

The public policy of the State of Illinois in relation to corporations taking real estate, is restrictive, and corporations not coming clearly within the provisions of the statute can not take real estate by devise in this State. Such taking tending to create perpetuities, will not be tolerated, unless clearly authorized by our laws. *Carroll* v. *East St. Louis*, 67 Ill. 568; *Starkweather* v. *American Bible Society*, 72 id. 50; *Trust Co.* v. *Lee*, 73 id. 142; *Hough* v. *Land Co.* id. 23.

The enactments of our legislature in relation to subjects embraced in the common law or the English statutes adopted by our State, to the extent that they deal with subjects em-

braced in the common law or English statutes in force, repeal the common law and English statutes by necessary implication. Rev. Stat. 1874, chap. 28.

Mr. WILLIAM ELLIOTT FURNISS, and Messrs. McCAGG & CULVER, for the appellees the Sullivans:

The appellant can not take any interest in the premises sought to be partitioned, because its charter restricts the exercise of its powers to three counties in Wisconsin. Private Laws of Wis. 1868, chap. 97.

A corporation has no authority to perform any act its charter does not authorize, expressly or affirmatively. Morawetz on Corp. secs. 149, 151; *Thomas* v. *Railroad Co.* 101 U. S. 71; *Dartmouth College* v. *Woodward,* 4 Wheat. 636; *Bank* v. *Godfrey,* 23 Ill. 602; *Fertilizing Co.* v. *Hyde Park,* 97 id. 659; Angell & Ames on Corp. (11th ed.) sec. 111; *Beatty* v. *Knowles,* 4 Pet. 162.

Appellant being restricted as to the place in which to exercise its corporate powers, can not invoke the principle of comity, or hold real estate in Illinois. *Day* v. *Manufacturing Co.* 1 Blatchf. 628; *Ducat* v. *Chicago,* 48 Ill. 172; 10 Wall. 410; *Paul* v. *Virginia,* 8 id. 168; *Health Ass. Co.* v. *Rosenthal,* 55 Ill. 85; *Carroll* v. *East St. Louis,* 67 id. 568; *White* v. *Howard,* 46 N. Y. 167.

Comity can not be invoked when to allow it would be contrary to the policy or prejudicial to the interests of Illinois. *Bank of Augusta* v. *Earle,* 13 Pet. 589.

A foreign corporation can not exercise its functions without permission. Morawetz on Corp. secs. 505, 508; *Milner* v. *Railroad Co.* 53 N. Y. 363; *Bard* v. *Poole,* 12 id. 505; *Ducat* v. *Chicago,* 48 Ill. 172; *Paul* v. *Virginia,* 8 Wall. 168; *Starkweather* v. *American Bible Society,* 72 Ill. 55; Rev. Stat. secs. 6, 106, 141, chap. 131; secs. 1, 4, 6, chap. 144; chap. 32, secs. 1, 26.

This is not a charitable devise. *Jones* v. *Williams,* Ambler, 651; *Attorney General* v. *Whorwood,* 1 Ves. Sr. 534; *Trust Co.* v. *Lee,* 73 Ill. 143.

The charter of appellant tends to create a perpetuity in favor of a foreign corporation, and perpetuities in real estate, of the character proposed by it, are not permitted in this State. *Carroll* v. *East St. Louis,* 67 Ill. 568; *Starkweather* v. *American Bible Society,* 72 id. 50; *Trust Co.* v. *Lee,* 73 id. 142; *Hough* v. *Land Co.* id. 23.

Mary A. Braley, at the time of her death, had no devisable interest. No estate could vest in her, under the will, until the death of the widow. *Dove* v. *Low,* 128 Mass. 38.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bill in this case seeks partition among the legal owners, the complainants alleging that they and one Frank Braley are such owners, of what remains of the real estate of Judd Braley, at the time of his death a citizen of Chicago, who died testate in March, 1863, leaving him surviving, his widow, Johanna Braley, and three children, Ellen C., Mary A., and Frank, his only next of kin and heirs at law. By his will he devised to his widow a life interest in the real estate, with remainder over to his children, in equal parts, at the death of the widow. His widow died on the 29th of April, 1883, and prior to the commencement of this suit. His daughter, Ellen C. Braley, intermarried with one Michael J. Sullivan, and died February 15, 1875, intestate, leaving her surviving two children, the complainants, Francis Joseph and Mary Elegius Sullivan, her heirs at law. The daughter, Mary A. Braley, died in Grant county, Wisconsin, on the 19th of September, 1874, single and without issue, leaving a will whereby she devised all her interest in this estate to the "Saint Clara Female Academy," a corporation organized and existing under and by virtue of the laws of the State of Wisconsin, solely for

educational purposes.   The bill treats this will of Mary A. Braley as insufficient to pass the title to the real estate sought to be partitioned, alleging that as to such real estate she died intestate.   The decree found that by virtue of the laws of Illinois the Saint Clara Female Academy could not take any interest in real estate in this State under the will of Mary A. Braley, and that the complainants and Frank Braley were the sole owners of the real estate, and made partition of it between them.   The Saint Clara Female Academy appeals from the decree.

The charter of the Saint Clara Female Academy gives to the corporation the power to acquire and hold real estate not to exceed the value of $500,000.   The decree finds that at no time since the making of the will of Mary A. Braley has the Saint Clara Female Academy owned or possessed property, real and personal, to exceed the sum of $50,000, and that the interest of Mary A. Braley in the premises sought to be partitioned, at the time of her death or since, did not exceed in value $35,000.

The principal question presented for determination is, whether a corporation created by the laws of Wisconsin for educational purposes, with power to acquire and hold real estate to the extent of $500,000 in value, is capable of taking, by devise, lands in Illinois.   It is the well settled doctrine that a corporation created in one State may, upon the principle of comity, exercise within another State the general powers conferred by its own charter and permitted by the law of its own State, provided the doing so be not inconsistent with the laws or public policy of such other State.   We need to do no more than make reference to some of the numerous authorities in support of this rule:   *Lumbard* v. *Aldrich*, 8 N. H. 31; *State* v. *B. C. and M. R. R. Co.* 25 Vt. 433; *White* v. *Howard*, 38 Conn. 342; *Thompson* v. *Waters*, 25 Mich. 214; *Thompson* v. *Swoope*, 44 Pa. St. 474; *Lathrop* v. *Commercial Bank of Sciota*, 8 Dana, 114; *Hollis* v. *Drew Theological Semi-*

*nary,* 95 N. Y. 166; *Cowell* v. *Springs Co.* 100 U. S. 55; *Christian Union* v. *Yount,* 101 id. 224; *Stevens* v. *Pratt,* 101 Ill. 224.

The public policy of the State is made manifest by its legislation. In order, then, to the solution of the question in hand, we have but to look to the laws of this State, and see whether they be adverse to a corporation for the purposes of education, taking and holding land in this State by devise, and if they are found not to be so, then the title of the appellant, under the will, must be sustained.

By section 4 of "An act to incorporate academies and seminaries of learning," in force March 6, 1843, (Laws 1842–3, p. 6,) the corporate bodies formed under the act are given power to take or receive any estate, real or personal, by the gift, grant and will of any persons whatsoever, and to sell, convey, demise, place at interest, or otherwise dispose of the same, for the benefit of the academy or seminary whose interests they represent. This act of 1843 was reënacted in the revision of 1845. (Div. 2, chap. 25, on Corporations, Rev. Stat. 1845, p. 117.) By section 4 of "An act for the incorporation of institutions of learning," approved January 26, 1849, (Laws 1849, p. 84,) the corporations formed thereunder are given the like power as by the said section 4 of the act of 1843. By an act entitled "An act to amend chapter 25 of the Revised Statutes, entitled 'Corporations,'" approved February 13, 1851, (Laws 1851, p. 85,) five sections of the act of 1843 reënacted in said chapter, containing certain conditions in order to become incorporated, one being that as to one hundred and sixty acres of land, are repealed, and the provision in said section 4 of the act of 1843, as to taking and holding real estate, is made to apply to all the corporations formed under such amendatory act. These statutory provisions continued in force down to July 1, 1874, when the following, being section 1, chapter 144, of the Revised Statutes of 1874, page 1090, went in force, the act being entitled

"An act to revise the law in relation to universities, colleges, academies and other institutions of learning:"

"Sec. 1. That any corporation which has been or may be incorporated under any general law of this State for the purpose of establishing or conducting a university, college, academy or other institution of learning, in addition to the powers granted by such law, shall have power to take, by purchase, gift, grant, devise or bequest, and to hold for the use of such corporation, any real or personal property whatever, and to sell, convey, mortgage or otherwise use the same, as may be considered most conducive to the interests of such institution. But such corporation shall have no power to divert any gift, grant, devise or bequest from the specific purpose designated by the donor."

This was the law of Illinois on September 19, 1874, when Mary A. Braley's will took effect by her death. These laws which have been referred to are not special and private, but general public laws of the State. In addition, appellant's counsel append to their brief a schedule, containing a list of some eighty corporations, for educational and similar purposes, created by private or special laws of this State, with the statement, of which there is no contradiction, that a reading of these special charters will show that in the large majority of cases the capacity was given to the corporations to take and hold lands, unlimited as to quantity or value.

It is thus seen that the general laws of Illinois, before and at the time this will took effect, were not only not prohibitory of corporations for educational purposes holding land in this State, but that they expressly empowered such corporations to take and hold real estate by grant and devise, and without limit in quantity and value. There is in the law of this State no discrimination against foreign corporations, but they are given a hospitable reception, and placed upon an equal footing with our own domestic corporations. Section 26 of chapter 32, on Corporations, (Rev. Stat. 1874, p. 290,) being a

revision of the act of April 18, 1872, provides: "Foreign corporations, and the officers and agents thereof, doing business in this State, shall be subject to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers. And no foreign or domestic corporation established or maintained in any way for the pecuniary profit of its stockholders or members, shall purchase or hold real estate in this State, except as provided in this act,"—the provision of the act in that regard being, that corporations for pecuniary profit may own so much real estate as shall be necessary for the transaction of their business, and that corporations not for pecuniary profit shall be capable of taking, purchasing, holding and disposing of real and personal estate for the purposes of their organization. By declaring that foreign corporations shall have no other or greater powers, there is a direct implication that they shall have equal powers with domestic corporations of like character. In *Stevens* v. *Pratt,* 101 Ill. 217, this court said: "The manifest and only purpose (of this section 26) was to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and bring them all under the influence of the same law."

As the section reads, foreign corporations "doing business in this State," it is said this corporation is not embraced therein, as it is not doing business in this State. Receiving lands in this State by devise, and the assertion in the State of ownership over them, we regard a sufficient doing of business in this State to bring appellant within the purview of this language of the section. But express permission for the corporation to exercise its powers here is not required,—there is implied permission, unless the contrary is shown. Thus, in *Cowell* v. *Springs Co. supra,* after so stating the rule, in effect, it was said: "If the policy of the State or territory

does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold real property, it must be expressed in some affirmative way," etc.

Some point is made upon this section that as it makes foreign corporations subject to all the restrictions of domestic corporations of like character, and as the latter are subjected to certain restrictions in becoming incorporated under the general law, and with respect to the qualifications of officers, to which foreign corporations are not subject, therefore the section can only apply to corporations organized under the general law of this State. This would be making but nonsense of the section. It speaks of foreign corporations, and means foreign corporations. The section takes foreign corporations as they are found existing, without regard to how they came into existence or to their mode of organization, and they are subjected only to the restrictions of already organized corporations in this State. As respects the holding of land, the exercise of which power alone is involved in this case, there are no restrictions by our law which are not equally applicable to both corporations, domestic and foreign.

It is contended that *Carroll* v. *East St. Louis,* 67 Ill. 568, *Starkweather* v. *American Bible Society,* 72 id. 50, and *United States Trust Co.* v. *Lee,* 73 id. 142, should rule this case in favor of appellees. The decision in the *Carroll case* was, that a corporation created in another State for the sole purpose of buying and selling lands, had not power to purchase and hold lands in this State, because it was against the policy of our legislation, and there had been refusal by our legislature to charter such corporations. In the *Starkweather case* it was held that a corporation of New York which was prohibited by the law of that State from taking land by devise, was therefore incapable of taking lands by devise in Illinois. This was the main and true ground of the decision, although it was said further in the opinion that the decision might also be placed upon the ground of that in the *Carroll case.* In

25—116 ILL.

*United States Trust Co.* v. *Lee,* the refusal of the lower court to appoint a foreign corporation a trustee of real estate was sustained, it being made a point in the decision that no such capacity of becoming a trustee of real estate had been bestowed upon any of our own corporations.

In the respect of what was actually decided in those cases there is no conflict with the decision in this case, but with certain *obiter dicta* in the *Carroll case,* there is disagreement. The statement which was made argumentatively in that case in regard to corporations for educational purposes, that the law of March 6, 1843, which has been referred to, expressly inhibits such corporations from severally holding more than one hundred and sixty acres of land, was founded on a misconception of fact. Section 1 of that act does provide that before persons shall associate themselves together and become a corporation, they must have land not exceeding one hundred and sixty acres, and must build a house thereon for the purposes of education. This is the only section of the act in which there is reference to one hundred and sixty acres of land. But section 4 of the act gives to the persons, when incorporated, unlimited capacity to take and hold land. There was the like misconception in the statement there made, that this law of 1843 was revised in 1849, when the power to hold lands was increased to one thousand acres. The act in 1849 spoken of, is the act of January 26, 1849, hereinbefore referred to, which is entitled "An act for the incorporation of institutions of learning," and which does not appear to be in any way an amendment to the law of 1843 or to the revision of 1845, or a repeal thereof, or to be inconsistent therewith, so that they may not stand together. The later act seems to provide for the incorporation of different species of educational institutions, as it contemplates that college and university corporations may be formed under it. Section 4 of this act of 1849 provides that the corporations formed under the act may take real and personal estate by grant and will, without

limit as to the power. And section 7 provides: "No corporation established as aforesaid shall be allowed to hold more than one thousand acres of land at any one time, unless the said corporation shall have received the same by gift, grant or devise, and in such case such corporation shall be required to sell or dispose of the same within ten years from the time the title thereto is acquired." This is all of the act respecting one thousand acres of land. The act thus gives unlimited power to take by devise, and to hold for ten years, but restricts the power to hold longer than that time more than one thousand acres.

It is insisted that the Saint Clara Female Academy is a corporation for pecuniary profit. There is nothing whatever in its charter indicative of this. The charter contains merely six short sections. The first creating the corporation for "educational purposes," with power to acquire, hold and convey property, real and personal. The second fixes the number of the members of the board of trustees. The third fixes the place of the location of the academy. The fourth limits the value of the real estate the corporation may hold, to $500,000. The fifth exempts the academy buildings, and the grounds on which they stand, not exceeding forty acres, from taxation. The sixth names when the act shall take effect. This is all,—not a word as to stock, stockholders, dividends, or suggestive of pecuniary profit to anybody. It is said that fees are charged for tuition. We suppose this to be the case with all educational institutions, with hardly an exception, if any. What is meant by "pecuniary profit," is "for the pecuniary profit of its stockholders or members," in the words of section 26, (Rev. Stat. 1874, p. 290,) before quoted. Such is not the purpose of this charter, but it is for educational purposes, and all the avails received are applied to the latter purposes. See *McDonald* v. *M. G. Hospital,* 120 Mass. 432, on this point. The proof is, "there is no pecuniary profit to the members of the corporation from this institu-

tion. There are no dividends declared, no money given to any member. The trustees themselves derive no personal profit. The corporation is not conducted for any other purpose than educational and charitable purposes." The record shows that the value of appellant's property but slightly exceeds the incumbrances and debts. That educational corporations are not corporations for pecuniary profit, is recognized by the law of this State in section 4, chapter 144, of the Revised Statutes of 1874, page 1090, which provides that any educational corporation theretofore · incorporated under any special law of the State, may "become incorporated under the provisions of 'An act concerning corporations,' approved April 18, 1872, relative to corporations not for pecuniary profit."

It is further insisted that the charter of the Saint Clara Female Academy is restrictive, in this, that it confines the business of the corporation to Sinsinawa Mound, in the county of Grant, and the counties of LaFayette and Dane, all in the State of Wisconsin, and because thus restrictive, the corporation can not hold real estate in Illinois. All of restriction which there is in this regard is, that the charter provides that the academy shall be located at Sinsinawa Mound, Grant county, Wisconsin, with power to establish and maintain a branch in the county of LaFayette, in the State of Wisconsin, and an amendatory act gives the power to establish and maintain a branch in the county of Dane, Wisconsin. The logical result of the argument on this head seems to us to be, that the corporation can exercise no power outside of the place where the academy is located, so that if appellant had not seen fit to establish any branch, then it could not have gone outside of Sinsinawa Mound to procure materials and labor for the erection of its academy building, or to purchase furniture and apparatus for it when erected, or to employ teachers to teach therein, nor could have exercised its power to sue until there had been a court established at Sinsinawa Mound. Any such construction is obviously to be rejected. And yet,

not to admit it, would seem to leave without foundation the position we are now considering. It does not follow that because the location of the academy is fixed at a particular place, all the powers of the corporation must be exercised at that place, and no other. The corporate purpose,—that of furnishing education,—may be should be carried on at the place where the academy is established, but the incidental powers which are necessary and proper for the maintaining of an academy there, may be exercised elsewhere. The receiving of gifts of money and property for the purpose of the corporation, is a means of maintaining the academy, of carrying out the object for which the corporation was formed, and the power given to take, hold and convey property, real and personal, for such purpose, may, we conceive, be exercised anywhere, unaffected by the restriction as to the academy's place of location. Because the corporation may not exercise all of its powers in this State, seems to be no reason why it may not here exercise some of them,—why it can not exercise the power to take, hold and dispose of land in this State for its purposes of education, although the location of its academy be confined to a particular place or places in Wisconsin.

The rule in respect of perpetuities, which appellees call to their aid, has no application to legacies or devises for educational purposes. *Heuser* v. *Harris*, 42 Ill. 425; *Andrews* v. *Andrews*, 110 id. 223.

But it is claimed that as the will of Mary A. Braley does not expressly declare that the property in question shall be used for educational purposes, therefore the devise is not for such purposes. The Saint Clara Female Academy exists only for "educational purposes," as declared by its charter, and a devise to that corporation we regard as a devise for educational purposes.

The grant of power here by the charter is, "to acquire, hold and convey property, real and personal;" and the point is made that the word "acquire," is not broad enough to in-

clude a taking by devise—that the word implies some element of effort on the part of the one who acquires.   In judicial opinions, and by law writers, the term is not infrequently used otherwise, and as coming to property by devise or descent, as well as in any other mode.   Thus Blackstone says:  "Descent, or hereditary succession, is the title whereby a man, on the death of his ancestor, acquires his estate by right of representation as his heir at law."   (2 Blackstone's Com. 201.)   We have no doubt that the power granted to "acquire" property, is broad enough to enable the corporation to take by will.

Appellees assert that Mary A. Braley, the testatrix, had, at the time of her death, no devisable interest in the premises sought to be partitioned.   Her interest came from the will of her father, Judd Braley, whereby he devised all his real and personal estate to his wife, in trust, to pay his debts and funeral expenses, to use so much of the income thereof as might be necessary for her own support and the support of his children, Ellen C. Braley, Mary A. Braley and Frank Braley, with power to sell and dispose of any portion of his estate, and to use the proceeds of the sale, or so much as might be needful, in the payment of his debts and funeral expenses, and to re-invest the balance for the benefit of his estate, concluding:  "And after the death of my said wife, all my estate, both real and personal, shall descend and belong to my said children in equal proportions, share and share alike, their and each of their heirs and assigns forever."   It is said the estate devised to the widow in trust must be held to have been one in fee, and if so, then no devisable interest vested in the children during its existence, and as Mary A. Braley died before the widow, that she had not at her decease any interest to devise, the estate at that time being vested in the widow.   The widow had a life estate in trust, with power of disposition of the fee.   Mary A. Braley, at the time of her death before the widow, had no estate in possession, it is true, but she had one in remainder, and it was a vested

remainder, as we regard it. Our statute makes devisable all the interest in possession, reversion or remainder which one has in any lands. Chancellor KENT, in his 4th Com. 261, says: "All contingent and executory interests are assignable in equity, and will be enforced if made for a valuable consideration; and it is settled that all contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an interest, where the person to take is certain, are transmissible by descent, and are devisable and assignable."

It seems clear that Mary A. Braley had, at the time of her death, a devisable interest in the land. Our conclusion is, that the devise to the Saint Clara Female Academy was a valid one, and that appellant took thereunder a one-third interest in the property sought to be partitioned.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE MAGRUDER: I do not concur in the foregoing opinion.