## AMERICAN WATERWORKS CO. OF ILLINOIS et al. v. FARMERS' LOAN & TRUST CO.

## CLARKSON v. SAME.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1896.)

### Nos. 715, 716.

1. MORTGAGES—CONVEYANCE SUBJECT TO MORTGAGE—ESTOPPEL.
   A corporation which accepted a conveyance of a waterworks plant by a deed describing certain mortgages thereon, and expressly declaring that the conveyance was made subject thereto, *held*, estopped thereby from questioning the validity of the mortgages.

2. SAME—ESTOPPEL AGAINST GRANTOR.
   A water company which had mortgaged its plant to secure issues of bonds, and afterwards conveyed the plant expressly subject to the mortgage debt, parting with all its interest in the property, and without binding itself to protect its grantee from foreclosure, or to pay any part of the incumbrance, cannot be heard to allege, as against the bondholders, that it had no authority to execute the mortgages.

3. FOREIGN CORPORATIONS—CHARTER POWERS.
   A corporation, organized under the laws of one state, which acquires property and carries on business in another state, carries with it into the latter state all the powers given to it by the laws of the state of its incorporation, including the power to mortgage its property, unless prohibited from so doing by the laws or public policy of the state in which it so carries on the business.

4. MUNICIPAL CORPORATIONS—WATERWORKS CONTRACT—ASSIGNABILITY.
   Charter power to contract with and procure individuals or corporations to construct and maintain waterworks, "on such terms and under such regulations as may be agreed on," authorizes the city, in its discretion, to allow parties erecting waterworks under contract to sell, assign, or mortgage the plant.

5. SAME.
   Where a municipal corporation has charter power to agree that a water-works company operating a plant in the city may mortgage the same, and the company does mortgage it, the question whether the contract between the city and the company did in fact authorize the latter to execute the mortgage cannot be raised by the company, as against its mortgagees and bondholders, so long as the city itself does not raise the question.

6. FORECLOSURE SALE—PURCHASE BY BONDHOLDERS—PAYMENT IN BONDS.
   On the foreclosure sale of the property of a corporation, bonds should not be received in payment of a bid, except for such proportion of the bid as the purchaser, on a distribution of the purchase money, is entitled to receive out of the purchase price, on account of the bonds by him held and tendered in payment; and the right to answer a bid in bonds should

not be limited to any particular bondholder, but should be extended to all bondholders on the same terms.

7. PLEADING IN FORECLOSURE SUITS—ANSWERS OF RECEIVERS—TIME OF FILING.
     An application by an ancillary receiver of a corporation for leave to file an answer to a foreclosure bill, for the purpose of setting up defenses already pleaded by the corporation itself, is properly denied, especially when not made until after all the testimony has been taken, and the cause heard and submitted.

Appeal from the Circuit Court of the United States for the District of Nebraska.

The suit out of which these appeals arise was brought by the Farmers' Loan & Trust Company, the appellee, to foreclose an original and a supplemental mortgage on a certain waterworks plant situated in the city of Omaha, Neb., which were given to secure the payment of an issue of negotiable bonds to the amount of $4,000,000, that were executed by the American Waterworks Company, a corporation of the state of Illinois.

The action was brought originally against the appellant the American Waterworks Company of Illinois, and against a corporation of the same name, to wit, the American Waterworks Company, a corporation organized under the laws of the state of New Jersey. E. Hyde Rust, as suspended receiver of the American Waterworks Company of New Jersey, and Alonzo B. Hunt, as temporary receiver of the same company, were also named as parties defendant to the original bill. The defendant companies filed a joint answer to the bill of complaint, and subsequently an amended answer, wherein they set up various defenses to the suit. After the taking of considerable testimony by both parties, a trial was had which resulted in a decree of foreclosure directing a sale of the mortgaged property for the satisfaction and payment of the mortgage debt. From that decree the two defendant companies, to wit, the American Waterworks Company of Illinois, and the American Waterworks Company of New Jersey, have appealed.

During the pendency of the suit at bar, an action was commenced in the circuit court of Cook county, Ill., against the appellant the American Waterworks Company of Illinois, to wind up the affairs of that company on the ground of its insolvency. In that proceeding Francis B. Peabody was appointed receiver of the property and effects of the insolvent corporation, and thereafter, by an order made, on May 2, 1895, by the circuit court of the United States for the district of Nebraska, Thaddeus S. Clarkson, the appellant, was appointed ancillary receiver of said company for the district of Nebraska. After the final hearing of the suit at bar to foreclose the aforesaid mortgages, and on the day that the final decree therein appears to have been entered, said Thaddeus S. Clarkson, in his capacity as ancillary receiver of the American Waterworks Company of Illinois, asked leave to file an answer to the bill of complaint, which application was by the circuit court refused. From the order thus made denying his application to file an answer to the bill of complaint, the receiver has also prosecuted an appeal. Both of said appeals are before this court for consideration upon the same record.

John L. Webster, for appellants.

J. M. Woolworth and David McClure (R. S. Hall was with them on brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The important questions which arise on these appeals will be best explained and understood by a succinct statement of the facts and circumstances that gave rise to the litigation. In the year 1880 the

city of Omaha, being a city of the first class, was authorized by a general law of the state of Nebraska regulating the organization and defining the powers of cities of the first class, "to erect, construct, and maintain waterworks either within or without the corporate limits of the city, and to make all needful rules and regulations concerning the use of water supplied by such waterworks, and to do all acts necessary for the construction, completion, management, and control of the same, including the appropriation of private property for the public use in the construction and operation of such waterworks; * * * and, * * * to contract with and procure individuals or corporations to construct and maintain waterworks on such terms and under such regulations as may be agreed on." Laws Neb. 1879, pp. 95, 99. The power thus conferred upon the city was exercised by its mayor and council by an ordinance, passed on June 11, 1880, which was subsequently amended, entitled "An ordinance to authorize and procure the construction and maintenance of waterworks in the city of Omaha, state of Nebraska." The first section of this ordinance was as follows:

"Section 1. Any person, company, corporation or association who shall erect, construct and maintain waterworks upon the principle of a combined system of direct pressure and reservoir, of the capacity, magnitude and character herinafter described, and as more fully and at large appears in the report and appendix tables of J. D. Cook, engineer, filed in the office of the city clerk of the city of Omaha, on the 25th and 31st days of May, A. D. 1880, and as finally approved by the city council of said city on the 8th of June, A. D. 1880, within and adjacent to the city of Omaha, in Douglas county, state of Nebraska, for the purpose of supplying said city and the citizens and inhabitants thereof for domestic, mechanical, public and fire purposes, shall have the right of way along, upon and under the public streets, alleys, public squares, and public places of said city for the purpose of placing and repairing their mains, pipes and other fixtures, including fire hydrants, during the time any such person, company, corporation or association, or their assigns, shall maintain and operate any such waterworks, and while constructing the same, upon the terms and conditions hereinafter mentioned."

The succeeding sections of said ordinance specified the sources from which the water supply for the city should be drawn, the size and location of reservoirs to be erected, the capacity of the pumping machinery to be employed, the size of the water mains and pipes, the general location thereof, the number of fire hydrants to be erected, the tariff of rates to be charged for supplying water both to public and private consumers, and many other details of construction and operation unnecessary to be mentioned. The twelfth section of the ordinance provided, in substance, that proposals should be invited and received by the city for furnishing the city with water for the period of 25 years from the date of the completion of the plant by means of a waterworks plant that was to be constructed and operated in conformity with the provisions of the ordinance. The final section of the ordinance reserved to the municipality the right to purchase the plant that might be thus constructed, at a valuation to be fixed by arbitration, at any time after the expiration of 20 years.

In pursuance of the provisions of the aforesaid ordinance, a contract was entered into between the city of Omaha and one Sidney

E. Locke, on July 20, 1880, whereby the latter person secured the right to construct and maintain waterworks, and to furnish water to the city of Omaha for public and private use for the term of 25 years from the completion of the works. On July 20, 1880, the aforesaid contract was assigned by Locke to the City Waterworks Company of Omaha, a corporation of the state of Nebraska. The latter company completed the works in accordance with the provisions of the contract, and the plant, when completed, was duly accepted by the city. On August 2, 1880, the City Waterworks Company executed a mortgage on the waterworks plant, then in process of construction, to secure an issue of bonds, to the amount of $400,000, which are still outstanding.

On or about April 1, 1887, the American Waterworks Company of Illinois, one of the appellants, purchased the plant now in controversy from the City Waterworks Company of Omaha, and subsequently, on July 1, 1887, and on January 16, 1889, it executed the two mortgages or deeds of trust to the Farmers' Loan & Trust Company, as trustee, which it seeks to have foreclosed. These mortgages, respectively, contained, in substance, the following recitals, to wit: That the mortgagor company (the American Waterworks Company of Illinois) was duly authorized to build, equip, and operate waterworks for the purpose of supplying water to cities, towns, and villages, and other municipal corporations; that it had purchased from the City Waterworks Company of Omaha the waterworks plant and real estate connected therewith, by means of which the city of Omaha and its inhabitants were supplied with water for fire and other purposes, including the contract with the city under which the City Waterworks Company was engaged in furnishing water to said city, and including, also, all contracts with private consumers; that, by the terms of its purchase of said waterworks plant, it had agreed to assume the bonded debt of said City Waterworks Company, and, in addition to said bonded debt, to assume and pay all other indebtedness of said City Waterworks Company; that the mortgagor company deemed it essential and necessary to the successful maintenance and operation of said works to make extensive improvements upon and additions to said waterworks plant, for the purpose of enabling it to comply with the increased demand made upon it for water, arising from the rapid growth of the city of Omaha; that it was vested with the power, under its charter, of contracting debts and borrowing money; and that it had been authorized, by a resolution duly passed by its board of directors on June 30, 1887, to issue bonds to the amount of $4,000,000, and to secure the same by a mortgage on its Omaha property, and by pledging its income and resources for the payment thereof. Said mortgages contained a further recital to the effect that, by virtue of the aforesaid resolution of the board of directors of the American Waterworks Company of Illinois, the proceeds of the bonds authorized to be issued were to be appropriated and used as follows: $800,000 for the purpose of extending, enlarging, and improving the waterworks plant of the city of Omaha that had been purchased; $1,700,000 for the purpose of paying the purchase price for said works, and to extinguish the bonded and

other indebtedness of the City Waterworks Company that had been assumed by the purchasing company; and the residue, $1,500,000, for the purpose of enlarging and improving the works in future, as occasion might require.

Contemporaneously with the execution and delivery of the afore-said mortgage or deed of trust, dated July 1, 1887, and prior to the execution of the supplemental mortgage dated January 16, 1889, the American Waterworks Company of Illinois executed and de-posited with the appellee, the Farmers' Loan & Trust Company, 4,000 negotiable bonds amounting in the aggregate to $4,000,000. By the terms of the mortgage given to secure the same, bonds to the amount of $1,600,000 were to be delivered forthwith by the Farmers' Loan & Trust Company to any person or persons who presented to it written orders for the delivery of bonds signed by the president and secretary of the mortgagor company. Bonds to the amount of $400,000 were to be retained by said trust company for the purpose of retiring the outstanding bonds to the same amount that had been executed by the City Waterworks Company of Omaha. The residue of the bonds were to be held in trust, and delivered from time to time by said trust company, under certain terms and con-ditions specified in said mortgage, which for present purposes need not be stated. It will suffice to say that the circuit court found and decreed that the Farmers' Loan & Trust Company had duly certified and put in circulation, in accordance with the provisions of the mortgage, bonds to the amount of $3,600,000, and it was stipulated by the parties in the progress of the trial that "a large part of the bonds in controversy had been negotiated and sold by C. H. Venner," who was a director of the American Waterworks Company, and was the chief manager of its financial affairs. This stipulation must be held to imply that the bulk of the entire issue of bonds—all of them, perhaps, except bonds, to the amount of $400,000, that are still held by the trust company to retire the outstanding bonds of the City Waterworks Company of Omaha—were sold for value in the open market, to purchasers who had no notice of any of the facts attend-ing the issuance of the bonds except such as were disclosed by the recitals contained in the mortgages securing the same.

The American Waterworks Company of Illinois took possession of the waterworks now in controversy shortly after it acquired the same by purchase from the City Waterworks Company of Omaha, to wit, in April, 1887, and continued to operate the works with the full knowledge and consent of the city of Omaha, until about the 24th day of April, 1891. In the meantime the city of Omaha made pay-ments to the vendee company for water supplied to the city for fire and hydrant purposes, and made such payments at the time and at the rate agreed upon in the original contract between itself and the said Sidney E. Locke; and in all other respects it appears to have recognized the American Waterworks Company of Illinois as the legitimate owner and assignee of the waterworks, and of all rights, privileges, and franchises incident thereto, that were originally ac-quired by said Locke by virtue of his contract with the city of Omaha. In the meantime, also, the American Waterworks Com-

pany of Illinois paid the interest on such of its bonds, dated July 1, 1887, as had been certified and put in circulation by the Farmers' Loan & Trust Company pursuant to the provisions of the aforesaid mortgage or deed of trust. On April 24, 1891, the American Waterworks Company sold and conveyed its entire waterworks plant, situated in the city of Omaha, and all the real estate, rights, and privileges connected therewith, to its namesake, the American Waterworks Company of New Jersey, which last-named company thereafter operated the works and supplied water to the city of Omaha at the rate agreed upon in the contract between the city and said Sidney E. Locke. It also paid the interest on the bonds now in controversy as they matured until January 1, 1892. The deed by which the property was thus conveyed by the Illinois Company to the New Jersey Company, described the outstanding incumbrances existing thereon, to wit, the aforesaid incumbrances for $400,000 and $4,000,000 respectively, and expressly declared that the property was conveyed to the grantee company "subject to said incumbrances."

In view of the foregoing facts, the American Waterworks Company of Illinois and the American Waterworks Company of New Jersey, which for convenience will be hereafter termed, respectively, the "Illinois Company" and the "New Jersey Company," now contend that the mortgages sought to be foreclosed are invalid for want of authority on the part of the Illinois Company to execute the same. This was the principal, if not the sole, defense pleaded in the several answers to the bill of complaint. In other words, while it was recited, in substance, in the mortgages now sought to be foreclosed, as heretofore shown, that they were executed by the Illinois Company for the express purpose, among others, of enabling it to obtain money by the sale of its bonds to pay for the mortgaged property, and to alter, extend, and improve the same, and render it more valuable and serviceable, it is now claimed by the mortgagor company, and by its successor in interest, the New Jersey Company, that the mortgages were and are void, that the New Jersey Company is entitled to hold the mortgaged property discharged from the lien thereof, and that the defense of ultra vires may be successfully pleaded both by it and by the Illinois Company, in a suit to foreclose the mortgages, without paying or offering to pay the whole or any part of the outstanding bonds thereby secured. The defense thus interposed does not commend itself to the favorable consideration of a court of equity, and, unless it is clearly sustained by authority which this court is bound to recognize and follow, it should be overruled. A number of authorities have been invoked by counsel for the appellants in support of the defense which is thus interposed, but, in our judgment, none of them, when fairly applied to the case in hand, are sufficient to justify a decision that the mortgages are void, and for that reason are not enforceable against the defendant companies. The New Jersey Company, we think, is estopped from asserting the invalidity of the mortgages executed by its predecessor, the Illinois Company, by virtue of the well-established rule that a purchaser of property who accepts a conveyance thereof which describes incumbrances existing thereon, and expressly declares that the conveyance is made

subject thereto, will not be allowed to question the validity of such incumbrances. One who thus buys property has no right to challenge the validity of a mortgage lien existing thereon at the date of his purchase, which his grantor by the terms of his conveyance did not see fit to challenge, but recognized in the most formal manner by declaring that he conveyed the property subject to the existing lien. Whether such mortgage is valid or otherwise is no concern of the purchaser, for in contemplation of law he only acquires an equity of redemption in the property conveyed to him,—that is to say, a right to discharge the mortgage debt,—and it would be a breach of good faith, having purchased this right and nothing more, to deny the validity of the incumbrance, and seek to avoid the payment thereof on that ground. As between the grantor and grantee in a conveyance made subject to an existing mortgage, the amount of the incumbrance should be regarded as a part of the purchase price left unpaid at the date of the conveyance which the grantee undertakes to pay. At all events, he impliedly agrees not to challenge the validity of the incumbrance. The authorities to this point are amply sufficient, in our opinion, to preclude the New Jersey Company from defending against the foreclosure on the ground that the mortgages are invalid. Freeman v. Auld, 44 N. Y. 50; Johnson v. Thompson, 129 Mass. 398; Ritter v. Phillips, 53 N. Y. 586; D'Wolf v. Johnson, 10 Wheat. 367; Calkins v. Copley, 29 Minn. 471, 13 N. W. 904; Shufelt v. Shufelt, 9 Paige, 137, 145; Jones, Mortg. (4th Ed.) §§ 744, 1491, and cases there cited.

It is also apparent, we think, that the Illinois Company has no such present interest in the mortgaged property as should entitle it to resist a foreclosure sale of the property for the purpose of paying its outstanding bonds. Long before this suit was brought, the Illinois Company had sold its plant situated in the city of Omaha, and had made a conveyance thereof to its grantee, subject to the mortgages thereon which are now in controversy. So far as the present record shows, it entered into no engagement with its grantee to pay any portion of the mortgage debt, but by the form of its deed devolved that duty upon the grantee, and expressly declined to assume any such obligation. It would seem, therefore, that a sale of the mortgaged property for the payment of the mortgage debt will inure to the advantage of the mortgagor company, rather than to its disadvantage; for, whether the mortgages by it executed did or did not create a valid lien on the property therein described and conveyed, it certainly cannot be denied that the mortgagor is liable on the outstanding bonds, by the sale of which it has realized a large sum of money, which it has appropriated to its own use and benefit. It is clearly liable on its bonds to the purchasers thereof, even though it had no power to execute the mortgages, and it will be relieved of this liability to the extent that such bonds are extinguished and paid by the proceeds of the sale of the mortgaged property. For this reason—that is to say, because it had parted with all interest in the mortgaged property, and is not bound by the terms of any contract or covenant to protect its grantee from a foreclosure sale, and in contemplation of law will be benefited by such

sale—it should not be heard to allege, as against the bondholders, that it executed the mortgages without authority.

On the argument of the case it was suggested that the Illinois Company was without power, under its charter, to execute mortgages on any real property that it might own or acquire; and with much force it was contended that the property covered by the mortgages now in question was of such a character, being a waterworks plant designed for public use and convenience, that it was not susceptible of being sold, assigned, or mortgaged without express authority derived under the laws of the state of Nebraska where the property is located. The first of these contentions is clearly untenable. The American Waterworks Company of Illinois was organized under a general incorporation law of the state of Illinois, the first section of which provides "that corporations may be formed in the manner provided by this act for any lawful purpose except banking, insurance, real estate brokerage, the operation of railroads, and the business of loaning money." The fifth section of the same act, which enumerates the powers that corporations formed thereunder may exercise, provides, among other things, that "they may borrow money at legal rates of interest and pledge their property, both real and personal, to secure the payment thereof, and may have and exercise all the powers necessary and requisite to carry into effect the objects for which they may be formed." Rev. St. Ill. (Cothran's Ann. Ed.) c. 32, §§ 1, 5. The powers thus conferred on the Illinois Company by the laws of Illinois it carried with it into the state of Nebraska, and was privileged to there exercise, unless it was prohibited from so doing by the provisions of some local law or the public policy of that state. Cowell v. Springs Co., 100 U. S. 55, 59; Female Academy v. Sullivan, 116 Ill. 375, 6 N. E. 183. And no law of the state of Nebraska has been cited which, in our judgment, deprived the Illinois Company of its right to exercise within the state of Nebraska its charter power to mortgage real estate by it owned and there situated.

With respect to the second contention of counsel above stated, it is sufficient to say that the charter power of the city of Omaha heretofore quoted authorized it "to contract with and procure individuals or corporations to construct and maintain waterworks, on such terms and under such regulations as may be agreed on." Acting under that power, it seems evident that the city was authorized to agree with anyone who undertook to construct and maintain waterworks for its benefit that he should have the right to assign his contract, or to sell or mortgage the plant, and that the assignee or purchaser should succeed to all the rights and privileges of the original contractor. The legislature saw fit to invest the city with full power and discretion to determine whether the person or corporation with whom it might enter into an agreement for the construction and maintenance of waterworks should be permitted to mortgage the plant and franchises incident thereto, or whether he should be denied that privilege. It was probably thought that the person or company who might undertake to construct an extensive system of waterworks for a growing city like the city of Omaha

would find it necessary to borrow money to complete the works, and to secure the loan by a mortgage on the plant and franchises, and that the city might deem it advisable to confer that privilege. It accordingly left the city at full liberty to enter into such an agreement with the contractor, and to grant such rights and privileges as it deemed advisable. Inasmuch, then, as the municipality was authorized by the general laws of the state to permit or to ratify the execution of an incumbrance covering the waterworks property and franchises, if the city of Omaha does not see fit to challenge the right of the Illinois Company to execute the mortgages now in controversy, it is not apparent that the mortgagor company has the right to raise that question. The city of Omaha has not hitherto questioned the validity of the incumbrances, and it is not a party to the suit, nor in anywise concerned in the present controversy. Moreover, it has hitherto for a long period of time recognized the assignability of the contract under and by virtue of which the waterworks plant was constructed, by paying hydrant rentals to the successive assignees according to the provisions of the contract, and by permitting them, as assignees, to exercise the franchises thereby granted to the original contractor. For this reason we do not deem it necessary or material, on the present occasion, to decide whether by the terms of the contract between the city of Omaha and Sidney E. Locke, or whether by the provisions of the ordinance on which that contract was based, the city did in fact expressly authorize the execution of an incumbrance covering the waterworks plant that was to be constructed. That is a question, we think, which, on the present record, the mortgagor company is not privileged to raise, and should not be permitted to raise.

Besides the points already discussed, the appellants indulge in some criticism of various provisions of the decree. It is claimed, in substance, that the decree of foreclosure and sale, as heretofore entered, permits the appellee, the Farmers' Loan & Trust Company, in case it becomes a purchaser at the foreclosure sale, to pay the amount of its bid in bonds at their par value, without reference to the price bid for the property, and that the decree also denies the right of other purchasers to answer their bids in bonds. If such is the proper construction of the provisions of the decree, and some paragraphs thereof doubtless give color to that construction, it should be corrected before a sale takes place. Bonds should not be received from any purchaser in payment of his bid, except for such proportion of the sum bid as the purchaser, on a distribution of the purchase money, shall be entitled to receive, out of the purchase price, on account of the bonds by him held and tendered in payment of his bid. In other words, bonds should not be received at par in payment of a bid unless the purchase price is adequate to pay the par value of all outstanding bonds. Moreover, the right to answer a bid in bonds should not be limited to a particular bondholder, but should be extended to all bondholders on the same terms. Counsel for the appellee have conceded that the provision in the decree requiring so much of the purchase price as is not paid in bonds to be paid "in gold coin of the United States of the present standard of fineness" may

result in some inconvenience and hardship to bidders, and that it is an unnecessary provision. As we understand, they consent that this clause may be expunged from the decree, so as to permit payment to be made in whatever kind of money is recognized as a legal tender by the laws of the United States. We also observe, although the point was not made in the argument, that the provisions in the existing decree relative to the place of sale and mode of advertisement are not such as will satisfy the requirements of the act of congress in that behalf, enacted on March 3, 1893. 27 Stat. 751, c. 225. In view of the aforesaid defects and uncertainties in the existing decree, it will be modified by this court, without remanding the case, by adding thereto the following provisions, to wit:

"All sums of money required to be paid under the provisions of this decree shall be paid in legal tender money of the United States; but the plaintiff or any other bidder at the sale herein provided for may answer his bid with the bonds or coupons heretofore mentioned which shall be received in payment of such bid for an amount equal to the sum of money which the holder of said bonds or coupons so tendered would be entitled to receive on account thereof on the distribution of the purchase price bid at such sale. Said sale shall be made at the courthouse of the county of Douglas, in the state of Nebraska, that being the county in which the property to be sold is situated. Notice of such sale shall be published once a week for four successive weeks in the 'Omaha Daily World-Herald,' and the 'Omaha Daily Bee,' said newspapers being printed, regularly issued, and published, and having a general circulation, in said county of Douglas, state of Nebraska, and also in some newspaper printed, published, and regularly issued, and having a general circulation, in the city of New York. All provisions of the original decree, to which this paragraph is amendatory, which are in conflict with any of the provisions of this paragraph, are hereby canceled and annulled; but in all other respects said decree, as entered by said circuit court of the United States for the district of Nebraska on June 24, 1895, shall be and remain firm and effectual."

Touching the appeal taken by Thaddeus S. Clarkson, as ancillary receiver of the Illinois Company, it is only necessary to say that his application to file an answer to the bill of complaint was made too late, and was properly denied by the circuit court for that reason, as well as for the reason that an answer setting up all the defenses which he proposed to make had already been filed by the company which he represented. The circuit court was justified in denying an application to file an answer which was not made until all the testimony had been taken, and the cause had been heard and submitted.

The decree of the circuit court for the district of Nebraska as herein modified by the aforesaid provision ordered to be inserted therein, is hereby affirmed, each party to pay its own costs in this court, except the costs incurred on the appeal taken by Thaddeus S. Clarkson, receiver, all of which costs will be taxed against said last-named appellant.